TEXAS ELECTRIC SERVICE
COMPANY, Appellant,

v.

Carl L. NIX et ux., Appellees.

No. 18011.

Court of Civil Appeals of Texas,
Fort Worth.

Oct. 26, 1978.

Opinion on Motion for Rehearing
Dec. 14, 1978.

Rehearing Denied Jan. 11, 1979.

Cantey, Hanger, Gooch, Munn & Collins,
and S. G. Johndroe III, Fort Worth, for
appellant.

McMillan & Lewellen, and Garry Lewellen, Stephenville, for appellees.

OPINION

MASSEY, Chief Justice.

█ In this condemnation case we conclude that a certain jury finding was so contrary to the greater weight and preponderance of the evidence as to be clearly erroneous; that, as a result, the jury finding upon a value of a 5 acre strip of farm land condemned for railroad trackage was excessive. The consequence is a necessity to reverse the judgment and remand the entire case for another trial.

Carl L. Nix and his wife, hereinafter termed condemnees, were the owners of a 186.5 acre farm across which the 5 acres was condemned as a strip running from north to south. Texas Electric Service Company was condemnor, and hereinafter will be so termed.

After the taking of the 5 acre strip under condemnation proceedings, condemnees' farm consisted of two land parcels in that part of it lay to the east of the railroad tracks and part to the west. The circumstances shown were such as to justify our conclusion that the value of the remaining 181 plus acreage comprising the farm was diminished in a per-acre value below its worth by the per-acre value before the condemnation. The strip condemned was across the portion of the farm devoted to the raising of peanuts. The acreage so devoted totaled 70 acres. Though the value of the 70 acres for peanut production was proved to have been greater than most if not all the farms in the county where condemnees' land was located there was not a valuation by any witness of that portion considered apart from the remainder of the farm. Other acreage in the farm was used for different agricultural and grazing purposes.

The troublesome circumstances are these: (a) by the jury findings the 181 remaining acres were valued on the identical per-acre basis as the 5 acres condemned, being at $1,250.00 per acre multiplied by the number of acres involved; (b) the 5 acres, though improved by terracing and cultivation, had no structural improvements located thereon as well as improvements by terracing and cultivation; (c) the record wholly lacks evidence bearing upon the dollar value of the structural improvements shown as existent on the 181 acres either as considered separate from the surface value or as considered as an enhancement in value thereof, and (d) the evidence showed that these improvements had substantial value in that among them was the modern brick residence (of 1,650 square feet) used by the condemnees, a two-bedroom frame dwelling rented to tenants, and a barn.

If the $6,250.00 value found by the jury (at $1,250.00 per acre) of the 5 acres condemned should be deemed correct the $226,-875.00 value found by the jury (at $1,250.00 per acre) as that of the 181 acre remainder was too low. If the $226,875.00 value found on the 181 acres was correct then the value found of the 5 acres, $6,250.00, was too high. We deem the $226,875.00 finding not to have been erroneous (in other words, by the evidence, we do not find the value to have been excessive as the condemnor contends) and therefore we consider ourselves bound by that jury finding. Among other reasons it is fixed and certain is because the condemnee has no cross-point contending the value found to have been too low. By the condemnees' commitment upon the propriety of that value finding of the 181 acres then, by the evidence, the finding that the 5 acres was worth $6,250.00 was in our opinion excessive. This is a consequence because to attribute to it the same value on a per acre basis (the $1,250.00 per acre) when it had no structural improvements would be to exhibit the jury finding as so contrary to the greater weight and preponderance of the whole of the evidence in the record as to be clearly erroneous. The contention is presented as a premise for reversal by the condemnor's point that there was an insufficiency of evidence to support the jury finding.

We do not consider any of the complaints made by condemnor in other of its points of

error to have presented reversible error. They are overruled for that reason.

However, because there will be necessity of retrial we will write upon one of the contentions of condemnor. The complaint is of the trial court's reception of evidence from condemnees' value expert witness upon comparable sales. On these sales, allegedly comparable, the witness had testified to the necessity, in each instance, to make them properly comparable would require some sort of "adjustment". The necessity was because there was no farm in the locality to be found on the market which was as good for the production of peanuts as that of appellees, had similar improvements lending to preservation of the agricultural integrity of the land, etc. What the witness seems to have done was to apply an increase in value of the condemnee's land in proportion to its greater productivity above the amount brought by land treated as comparable, to take into consideration the improvements by way of the terracing of condemnees' land, with a resultant enhancement in value, etc.

An expert's value testimony is admitted because he is qualified as an expert. Evidence from him concerning actual market sales, as bearing upon ultimate market value issues, constitute a reinforcement of his testimony upon value of the property immediately in issue. An ultimate issue market value opinion figure in dollars and cents which is backed up by an evident knowledge of actual market sales in close vicinity to, or adjoining if possible, to the subject property is very effective and persuasive as to value before the jury. Rayburn, Texas Law of Condemnation, p. 382, § 117, "Market Sales, Comparative Market Values". The determination of whether there truly is comparability will vary with each particular fact situation and where there is objection by an opposing party that any particular sale represented to be comparable is not so qualified that it may be received for the purpose requires the trial judge to determine whether there has been the qualification entitling the witness to testify concerning it. In passing upon the admissibility of such evidence as shedding light upon the value of the land which is in controversy the trial court must be granted a wide discretion. His action, whether it be such as occasions exclusion or admission of the evidence, will not be disturbed unless an abuse of discretion is shown. *Southwestern Bell Tel. Co. v. Ramsey*, 542 S.W.2d 466, 476 (Tex.Civ.App.—Tyler 1976, no writ history), citing numerous other no writ history cases in which there have been similar expressions upon the law.

The judgment is reversed, with the cause remanded for another trial.

### OPINION ON MOTION FOR REHEARING

Judgment rendered October 26, 1978 is set aside, but not our opinion delivered the same date.

On the Nix's Motion for Rehearing was request that there be deletion from the total award by the trial court's judgment, on November 3, 1977, that calculable amount which would be the maximum which could be in dispute relative to the value of the 5 acre strip condemned. There was voluntary tender thereof with request that our judgment be one of affirmance of that of the trial court as thus reduced. In other words, Nix wants whatever judgment there might be upon taking the figure of $117,975.00, (the trial court's award as diminished value of the Nix 181.5 acres, which will be retained in its damaged condition), plus that value which the most favorable evidence to Texas Electric would permit value reduction of the 5 acres condemned; then, the two figures added together made the final judgment. By reference to the record the most favorable evidence as applied to Texas Electric Service Company's position is found in the testimony of Gary Luker, condemnor's value witness. $2,950.00 is the minimum amount proper to have been found by the jury as damages flowing from condemnation of the 5 acres.

To add together $117,975.00 and $2,950.00 results in the total of $120,925.00 (the judgment of the trial court was for the total

amount of $124,225.00, plus interest and costs). Thus, the amount of remittitur tendered was $3,300.00 (and the interest on such amount as calculable from the trial court's judgment), along with prayer that the judgment be reduced to $120,925.00, plus interest and costs.

We deem the situation in this case one in which we should not have found excess in the judgment, nor one in which the $3,300.00 fitted the term "excess" as usual to a judgment as applied to which an appellate court might make a suggestion of remittitur. The question was considered at time of our original judgment and opinion; nothing whatever was stated in the opinion bearing upon remittitur.

However, certainly there is nothing which inhibits the tender of a remittitur by a plaintiff/appellee in the attempt to save the greater part of a judgment obtained in the trial court. Nix, in that posture and of his own volition, made the tender of remittitur upon representation that such removed any possible prejudice to Texas Electric Service Company so that no greater amount would be adjudged its liability than it had in effect conceded for purposes of compensation because of the 5 acres condemned.

■ A party to an appeal has the right to remit part of the judgment in order to save vexatious expenses and prolonged litigation and to prevent a reversal. 4 (Part 2) Tex.Jur.2d, p. 568 "(Appeal & Error—Civil Cases)", § 903 "(Correction of Errors in Lower Court Judgment)—Remittitur". Remittitur may be employed to cure the error of allowing consideration by the jury of an improper element of damages, or of an improper award of such an element, when the element is fixed in amount or when the maximum for the element can be ascertained with precision. 4 McDonald, Texas Civil Practice (1971 Rev.), p. 303, "New Trial", § 18.22 "(Order—Remittitur)". A condemnation case of similarity to this one, in which the question of remittitur was considered and deemed appropriate in curing error in the judgment was City of Dallas v. McLemee, 378 S.W.2d 393 (Tex.Civ. App.—Dallas 1964, no writ hist.). There

the principle and its application was in accord with Texas Jurisprudence and Professor McDonald.

■ Resisting the Nix tender of remittitur, Texas Electric cites Texas Power & Light Company v. Lovinggood, 389 S.W.2d 712 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.). On page 720 of the opinion in that case was written: "Since this appeal presents a case of prejudicial error in addition to excessiveness of the judgment, the error cannot be cured by remittitur." The "other" prejudicial error to which there was reference was related to erroneous instructions given by the court in its charge to the jury, deemed by the appellate court to have amounted to reversible error. Properly analyzed the case supports the right of a plaintiff/appellee to have sustained the principal part of the judgment obtained in the trial court by means of remittitur and not Texas Electric Service Company.

Our holding is that by tender of the remittitur the judgment of the trial court in this case is subject to reformation, and, upon reformation may be affirmed.

Accordingly, in view of the remittitur the judgment of the trial court is reformed so as to provide in the place and stead of that portion awarding monetary recovery the following: "The defendants, Carl L. Nix and Joyce Nix, have and recover of and from Texas Electric Service Company the sum of $120,925.00 plus interest on the amount of $103,925.00 at the rate of 9% per annum from and after the 15th day of April, 1975, provided, however, that execution shall issue only on the amount of $103,-925.00 plus interest, being the excess of such award over and above the amount heretofore deposited to the credit of such defendants with the Clerk of this Court, plus all costs of this proceeding in the trial court." As so reformed the judgment is affirmed.

Costs of appeal are adjudged as follows: 75% to be taxed against Texas Electric Service Company, appellant; 25% to be taxed against Carl L. Nix and Joyce Nix.